FILED
2022 JAN 7 PM 1:28
CLERK
U.S. DISTRICT COURT

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| JULIE ALDER R, <br><br> Plaintiffs, <br><br> v. <br><br> KILOLO KIJAKAZI, Acting Commissioner of Social Security, <br><br> Defendant. | MEMORANDUM DECISION AND ORDER AFFIRMING THE DECISION OF THE COMMISSIONER <br><br> Case No. 2:20-cv-00220-DBP <br><br> Chief Magistrate Judge Dustin B. Pead |

Plaintiff Julie Alder. R., seeks judicial review of the Commissioner's decision denying her claim for disability insurance benefits under Title II of the Social Security Act. The parties have consented to proceed before the undersigned in accordance with 28 U.S.C. § 636(b)(1)(c). (ECF No. 21.) Having considered the parties' memoranda, relevant case law, and the record, the court affirms the Commissioner's decision.[1]

## BACKGROUND

The Claimant applied for disability and disability insurance benefits on March 9, 2017, asserting she was disabled as of July 30, 2016. Plaintiff's claims were denied initially and on reconsideration. A hearing before an administrative law judge (ALJ) was held on January 17, 2019, where Plaintiff appeared with counsel. Tr. 30-58.[2] The Claimant, her husband, and a vocational expert testified at the hearing.

---

[1] The court elects to decide this case based on the written record.

[2] Tr. refers to the transcript of proceedings before the court.

Following the hearing, the ALJ issued a decision finding the Claimant not disabled under the Social Security Act. In reaching his decision, the ALJ followed the five-step disability-determination process. *See Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009) (summarizing the five-step process). At step two, he found that Claimant had two severe impairments: degenerative disc disease and obesity. The ALJ found Claimant's alleged fibromyalgia not medically determinable. The ALJ determined Ms. R. had the residual functional capacity (RFC) to

> Perform light work … except she can occasionally, climb ramps and stairs, climb ladders and scaffolds, balance, stomp, kneel, crouch, and crawl. She can occasionally be exposed to unrestricted heights and dangerous moving machinery.

Tr. 19. After considering testimony from the Claimant's husband, and a vocational expert (VE), the ALJ found Ms. R capable of performing other jobs that exited in the national economy. These include information clerk, office helper, and clerical checker. Thus, Plaintiff was not disabled and the ALJ denied her application for benefits. The Appeals Council subsequently denied review, making the ALJ's decision the Commissioner's final decision for purposes of review. *See Doyal v. Barnhart*, 331 F.3d 758, 759 (10th Cir. 2003).

## STANDARD OF REVIEW

This court "review[s] the Commissioner's decision to determine whether the factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (quotations and citations omitted). The Commissioner's finding, "if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. It requires more than a scintilla, but less than a preponderance." *Lax*, 489 F.3d at 1084 (quotations and citations omitted). "It means—and

means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (2019) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). In the context of a social security appeal, "the threshold for such evidentiary sufficiency is not high." *Id.* "In reviewing the ALJ's decision, [this court may] neither reweigh the evidence nor substitute [its] judgment for that of the [ALJ]." *Madrid v. Barnhart*, 447 F.3d 788, 790 (10th Cir. 2006) (quotations and citations omitted). Finally, the court "examine[s] the record as a whole, including whatever in the record fairly detracts from the weight of the [ALJ's] decision and, on that basis, determine[s] if the substantiality of the evidence test has been met." *Glenn v. Shalala,* 21 F.3d 983, 984 (10th Cir. 1994) (quotations and citations omitted.)

An impairment is "not severe" when the "medical evidence establishes only a slight abnormality or a combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work." *Bowen v. Yuckert,* 482 U.S. 137, 154 n. 12 (1987). The Tenth Circuit has held that certain minor errors are not enough to "undermine confidence in the determination of the case" and do not constitute reversible error. *Allen v. Barnhart*, 357 F.3d 1140, 1145 (10th Cir. 2004).

## DISCUSSION

Plaintiff alleges disability due to five torn discs, degenerative arthritis, fibromyalgia, degenerative disc disease, neuropathy, radiculopathy, fibro fog, fall risk, and hyperthyroid. To establish disability, Claimant must show that she has an

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months …." 42 U.S.C. § 423(d).

On appeal, Plaintiff asserts the ALJ committed several errors. First, the ALJ failed to properly evaluate her fibromyalgia finding it not medically determinable. Second, the ALJ failed to properly develop the administrative record. Finally, the ALJ erred in not considering the side effects of her medications.

I. **The ALJ Properly Evaluated Claimant's Assertions of Fibromyalgia**

The Tenth Circuit has recognized that proving fibromyalgia is difficult and "'presents a conundrum for insurers and courts evaluating disability claims.'" *Gilbert v. Astrue*, 231 Fed.Appx. 778, 783 (10th Cir. 2007) (quoting *Welch v. UNUM Life Ins. Co. of Am.*, 382 F.3d 1078, 1087 (10th Cir. 2004)). The Tenth Circuit has discussed fibromyalgia:

> Fibromyalgia, previously called fibrositis, is "a rheumatic disease that causes inflammation of the fibrous connective tissue components of muscles, tendons, ligaments and other tissue." *Benecke v. Barnhart*, 379 F.3d 587, 589 (9th Cir. 2004). It is a chronic condition, causing "long-term but variable levels of muscle and joint pain, stiffness and fatigue." *Brosnahan v. Barnhart*, 336 F.3d 671, 672 n.1 (8th Cir. 2003). The disease is "poorly-understood within much of the medical community [and] ... is diagnosed entirely on the basis of patients' reports and other symptoms." *Benecke*, 379 F.3d at 590. Clinical signs and symptoms supporting a diagnosis of fibromyalgia under the American College of Rheumatology Guidelines include "primarily widespread pain in all four quadrants of the body and at least 11 of the 18 specified tender points on the body." *Green-Younger v. Barnhart,* 335 F.3d 99, 107 (2d Cir. 2003); *see also Brosnahan*, 336 F.3d at 678 (objective medical evidence of fibromyalgia includes consistent trigger-point findings). Fibromyalgia can be disabling. *Kelley v. Callahan*, 133 F.3d 583, 589 (8th Cir. 1998).

*Moore v. Barnhart,* 114 F. App'x 983, 991 (10th Cir. 2004).

The Seventh Circuit described fibromyalgia as follows:

> Its cause or causes are unknown, there is no cure, and, of greatest importance to disability law, its symptoms are entirely subjective. There are no laboratory tests for the presence or severity of fibromyalgia. The principal symptoms are "pain all over," fatigue, disturbed sleep, stiffness, and—the only symptom that discriminates between it and other diseases of a rheumatic character—multiple tender spots, more precisely 18 fixed locations on the body (and the rule of thumb is that the patient must have at least 11 of them to be diagnosed as having fibromyalgia) that when pressed firmly cause the patient to flinch.

*Sarchet v. Chater*, 78 F.3d 305, 306 (7th Cir. 1996).

The ALJ noted that at the hearing, "the Claimant's representative argued that the claimant's main disabling impairment is fibromyalgia." Tr. 18. Claimant's counsel "conceded that the claimant did not have tender point testing conducted." *Id.* Leading the ALJ to find that Ms. R. did not meet the requirements of 12-2pA. The court finds no error in this analysis.

Specifically, at the hearing, Claimant's counsel stated, "there are not specific notes where [medical providers] say well, she has nine out of the 18 tender points or 16 out of whatever. We don't have that, but what we do have [are] the problem with her back, tender[ness] in her hips, throughout her lower spine, and her shoulders." Tr. 35. On appeal, Plaintiff argues her medical records establish the requisite tender points. She points to tenderness in her low back multiple times, her right knee, across her lumbar spine and "in all extremities". Reply p. 2-3.

Social Security Ruling 12-2p "provides guidance on how the SSA develops and evaluates fibromyalgia claims. SSR 12-2p, 2012 WL 3104869, at *1 (S.S.A. July 25, 2012). A diagnosis of fibromyalgia alone is insufficient. Rather, the medical criteria must meet either section II(A) or II(B). Section II(A) requires all three of the following:

> 1. A history of widespread pain—that is, pain in all quadrants of the body (the right and left sides of the body, both above and below the waist) and axial skeletal pain (the cervical spine, anterior chest, thoracic spine, or low back)—that has persisted (or that persisted) for at least 3 months. The pain may fluctuate in intensity and may not always be present.
>
> 2. At least 11 positive tender points on physical examination (see diagram below). The positive tender points must be found bilaterally (on the left and right sides of the body) and both above and below the waist.
>
> a. The 18 tender point sites are located on each side of the body at the:
> • Occiput (base of the skull);
> • Low cervical spine (back and side of the neck);
> • Trapezius muscle (shoulder);
> • Supraspinatus muscle (near the shoulder blade);
> • Second rib (top of the rib cage near the sternum or breast bone);

> • Lateral epicondyle (outer aspect of the elbow);
> • Gluteal (top of the buttock);
> • Greater trochanter (below the hip); and
> • Inner aspect of the knee.
>
> b. In testing the tender-point sites,6 the physician should perform digital palpation with an approximate force of 9 pounds (approximately the amount of pressure needed to blanch the thumbnail of the examiner). The physician considers a tender point to be positive if the person experiences any pain when applying this amount of pressure to the site.
>
> 3. Evidence that other disorders that could cause the symptoms or signs were excluded.

Id. SSR 12-2P, 2012 WL 3104869, at *2–3.

On appeal, Ms. R points to tenderness across her low back multiple times, her left shoulder region, her right knee on multiple occasions, and "tenderness in all extremities." Reply p. 2-3. Claimant's cited evidence is insufficient to establish section II(A)'s requirement of at least 11 positive tender points on examination. Broad generalizations of pain across regions is insufficient and Claimant fails to point to any specific tender point testing by medical professionals. Nothing before the court demonstrates error in the ALJ's analysis as to section II(A).

Next, Claimant asserts the ALJ did not properly consider fibromyalgia under section II(B). To establish fibromyalgia under section II(B), a person must meet all the following:

> 1. A history of widespread pain …;
> 2. Repeated manifestations of six or more FM symptoms, signs, or co-occurring conditions, especially manifestations of fatigue, cognitive or memory problems ("fibro fog"), waking unrefreshed, depression, anxiety disorder, or irritable bowel syndrome; and
> 3. Evidence that other disorders that could cause these repeated manifestations of symptoms, signs, or co-occurring conditions were excluded ….

Id. 2012 WL 3104869, at *3.

The ALJ specifically noted under section 2(B) pain complaints from Claimant in the "lumbar spine, bilateral lower extremities, and left shoulder but … no repeated right upper extremity pain complaint." Tr. 18. The ALJ next noted a lack of repeated manifestations of six or more symptoms, signs or co-occurring conditions pointing to specific evidence in the record. Finally, the ALJ cited to a lack of other medical conditions excluded by medical professionals. This analysis undermines Claimant's unsupported assertion that the ALJ erred in considering section 2(B). The Claimant's citations to general medical evidence in the record of widespread pain and routine medical tests, does not undermine the ALJ's analysis. While the Tenth Circuit has found problems with some ALJs analyzing fibromyalgia, *see e.g., Moore,* 114 F. App'x at 992 (noting a failure by the ALJ to fully understand fibromyalgia), that is not the case here. The ALJ considered evidence under both section II(A) and section II(B), and properly rejected a medical finding of fibromyalgia.

## II.     The ALJ Properly Developed the Record

Claimant next asserts the ALJ had an obligation to further develop the record by either seeking further clarification from a treating physician or ordering a consultative examination.

> The ALJ has a basic obligation in every social security case to ensure that an adequate record is developed during the disability hearing consistent with the issues raised. This is true despite the presence of counsel, although the duty is heightened when the claimant is unrepresented. The duty is one of inquiry, ensuring that the ALJ is informed about facts relevant to his decision and learns the claimant's own version of those facts.

*Henrie v. U.S. Dep't of Health & Human Servs.*, 13 F.3d 359, 360–61 (10th Cir.1993) (citations, quotations, and brackets omitted). Under 20 C.F.R. § 404.1519(a), a consultative exam may be necessary to "try to resolve an inconsistency in the evidence, or when the evidence as a whole is insufficient to allow us to make a determination or decision on your claim." 20 C.F.R. § 404.1519a.

Here, there was no need to further develop the record because sufficient evidence existed for the ALJ to make a disability determination. There was evidence in the record regarding Claimant's pain, and other alleged medical problems. There were years of treatment records, function reports, and Plaintiff's own testimony, as well as the opinions of state agency physicians. The fact that such evidence supports the ALJ's decision, rather than leaning in favor of Claimant's interpretation of the evidence, is not a sufficient reason to further develop the record, or to order a consultative examination.

Further, Ms. R was represented at the hearing before the ALJ. In *Hawkins v. Chater*, the Tenth Circuit held:

> when the claimant is represented by counsel at the administrative hearing, the ALJ should ordinarily be entitled to rely on the claimant's counsel to structure and present claimant's case in a way that the claimant's claims are adequately explored. Thus, in a counseled case, the ALJ may ordinarily require counsel to identify the issue or issues requiring further development. *See Glass v. Shalala, 43 F.3d 1392, 1394–96 (10th Cir.1994)* (refusing to remand for further development of the record where the ALJ had carefully explored the applicant's claims and where counsel representing claimant failed to specify the additional information sought).

113 F.3d 1162, 1167–68 (10th Cir.1997); see also Maes v. Astrue, 522 F.3d 1093, 1096 (10th Cir.2008) (same). Here, there was no request from Claimant's counsel for any other existing medical records, for a consultative fibromyalgia exam, or any other development of the record.

### III. The ALJ Adequately Considered Plaintiff's Medications

Finally, Claimant takes issue with the consideration of the side effects of her medications. Claimant cites to a functional report from September 2017 wherein she reports side effects that prevented her from driving, led to her legs swelling and a decrease in sex drive. Tr. 237. Yet, the record before the ALJ demonstrates that Claimant did not consistently report medication side

8

effects to treatment providers. Thus, the lack of evidence regarding side effects in the record supports the ALJ's analysis regarding this issue.

## CONCLUSION AND ORDER

On appeal the court is charged with determining whether the factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied. See *Lax*, 489 F.3d at 1084. On the record before the court, the court finds the Commissioner's decision is supported by substantial evidence and the correct legal standards were applied. Further, the court finds that the ALJ did not err in analyzing Claimant's fibromyalgia.

Accordingly, IT IS HEREBY ORDERED that the Commissioner's decision in this case is AFFIRMED.

DATED this 7 January 2022.

_____
Dustin B. Pead
United States Magistrate Judge